**E-FILED**
Friday, 02 February, 2007  12:08:16 PM
Clerk, U.S. District Court, ILCD

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
### PEORIA DIVISION

| | |
|---|---|
| JOSEPH A. THOMAS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| CITY OF PEORIA, ILLINOIS, | ) |
| | )    No. 06-1018 |
| & | ) |
| | ) |
| SONNI WILLIAMS, Assistant | ) |
| Corporation Counsel of the | ) |
| City of Peoria, | ) |
| | ) |
|     Defendants. | ) |

### O R D E R

Before the Court is the City of Peoria's Motion to Dismiss. (Doc. 25) and Sonni Williams' ("Williams") Motion to Dismiss (Doc. 27).  Plaintiff has filed two separate Responses to these Motions (Docs. 36 & 37).  Also before the Court is the City of Peoria's Motion to Deny Class Certification (Doc. 23) and Williams' Motion to Deny Class Certification (Doc. 29). Plaintiff has also filed two separate responses to these Motions (Doc. 28 & 41).  For the following reasons Defendants' Motions to Dismiss are GRANTED IN PART AND DENIED IN PART, and Defendants' Motions to Deny Class Certification are GRANTED.

## I.
### BACKGROUND

Plaintiff, Joseph A. Thomas, was operating his vehicle on January 30, 2005 when he was stopped for a traffic violation in the City of Peoria. Plaintiff was arrested on an outstanding arrest warrant for a *Joshua* A. Thomas.  Plaintiff did not have the same name as the name on the arrest warrant, nor did he have the same address as that listed on the warrant.  However, he did have the same driver's license number as the number listed on the arrest warrant.  Plaintiff was taken to the Peoria County Jail where he paid a $100 bond and was released

On February 10, 2005, Plaintiff (*Joseph* Thomas) appeared before Circuit Court Judge Albert Purham.  Judge Purham held that the individual appearing before him was not the Joshua Thomas listed in the arrest warrant and ordered that the bond be refunded.

Plaintiff now brings a suit under the Civil Rights Act, 42 U.S.C. § 1983, and Amendment IV and XIV of the United States Constitution.  Plaintiff also brings claims based in state law for abuse of process and false arrest.  Additionally, Plaintiff seeks relief on behalf of a class of similarly situated individuals.

The focus of Plaintiff's claim, however, is not just upon the false arrest.  The focus of Plaintiff's claim is mostly upon

2

the grounds for *Joshua* Thomas's warrant – specifically, the fact
that Joshua Thomas's arrest warrant was for unpaid parking
tickets.  Joshua Thomas had nine unpaid parking tickets by
February 10, 2004.  Defendant Williams, as attorney for the
city, filed with the Circuit Court of Peoria County, Illinois, a
parking ticket complaint.  The city then filed a summons for
issuance by the Circuit Clerk of Peoria County.  However the
City was unable to serve process upon Joshua Thomas.  Williams
then obtained an alias summons on June 28, 2004, but they were
again unable to successfully serve that summons.  A second alias
summons was issued on August 12, 2004 and again they were unable
to serve that summons.  Furthermore, a postal inquiry revealed
that Joshua Thomas was not residing at the listed address.

On October 8, 2004, Circuit Judge Stephen Kouri issued the
arrest warrant for Joshua Thomas. According to Plaintiff's
Complaint, Williams supplied the incorrect driver's license
number in a supplement to her Affidavit in Support of Issuance
of Arrest Warrant.  Plaintiff was arrested with a similar name
and the same driver's license number as the arrest warrant.  He
is now bringing a claim not just for the false arrest but also
seeks to represent a class of similarly situated persons who
have been arrested for parking tickets or who have outstanding
arrest warrants for parking tickets.

## II.
## LEGAL STANDARD

When considering a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), the Court must view the Complaint in the light most favorable to the Plaintiff and the Complaint's well-pleaded factual allegations must be accepted as true.  Williams v. Ramos, 71 F.3d 1246, 1250 (7th Cir. 1995).  Therefore, a complaint can only be dismissed if a plaintiff cannot prove any set of facts upon which relief can be granted.  Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1429-30 (7th Cir. 1996).  However, the Court is not bound by a plaintiff's legal conclusions.  Baxter by Baxter v. Vigo County School Corp., 26 F.3d 728, 730 (7th Cir. 1994).  The province of Rule 12(b)(6) motions is to question the availability of a legal formula justifying relief on the alleged facts, not to test or determine the facts themselves. Maple Lanes, Inc. v. Messer, 196 F.3d 823, 824-25 (7th Cir. 1999).

## III.
## ANALYSIS

In order to defeat the Motions to Dismiss, Plaintiff raises several arguments.[1]  There are two main provinces of Plaintiff's

---

[1] The Court notes that neither party raised the issue of standing.  The issue is whether Joseph Thomas could challenge the constitutionality of the warrants issued for Joshua Thomas, even though he was not the intended object of the warrant. Case

claim.  Plaintiff is seeking to represent a class of persons
arrested or subject to outstanding arrest warrants without
service in City of Peoria noise and parking actions.  Thus, the
focus of Plaintiff's arguments are on the constitutionality of
arrests without service for noise and parking violations.
Plaintiff's secondary arguments focus on Plaintiff's mistaken
arrest.  The Court will address the following arguments raised
by the parties:  A) Plaintiff's numerous statutory arguments, B)
the status of parking violation actions as a quasi-criminal
matter, C) Plaintiff's procedural due process arguments, D) the
issues of absolute and qualified immunity, and E) the issue of
class certification.  Plaintiff's claim for false arrest can not
be dismissed at this stage and will not be addressed until the
Summary Judgment stage of litigation.

        A. Plaintiff's Statutory Arguments.

    Plaintiff presents several arguments that have already been
addressed in several of the other 'parking-ticket' cases which
have appeared in this District.  Previously, the City of Peoria
and Plaintiff's Counsel debated over which section of Illinois

_____

law suggests that he does have standing to bring such a claim
even though he was not the object of the allegedly
unconstitutional actions.  Coggins v. Carpenter, 468 F.Supp. 270
(D.C.Pa. 1979)(citing Trafficante v. Metropolitan Life Ins. Co.,
409 U.S. 205 (1972) for the proposition that a person has
standing to assert claims under 42 U.S.C. § 1983 if that person
was aggrieved or injured by the conduct, even if that person was
not the object of the conduct allegedly in violation of 42
U.S.C. § 1983).

Law governed parking.  Plaintiff's Counsel argued that Illinois

Motor Vehicle Code controlled the issue while Defendant's argued

that the Illinois Municipal Code applied. [2]  These arguments were

presented before United States District Judge Michael M. Mihm in

Rist v. City of Peoria, 05-1013 (C.D.Ill. Order on Motion to

Dismiss, September 26, 2005).  Judge Mihm held that the Illinois

Municipal Code is the proper chapter of Illinois law for courts

to reference when determining whether Illinois state law

authorizes the arrest of a person who has failed to pay multiple

parking tickets.  Judge Mihm's reasoning went as follows:

> The Illinois Vehicle Code gives local authorities
> the power to regulate "the standing or parking of
> vehicles." 625 ILCS 5/11-208. Contrary to Plaintiff's
> assertion, Section 5/11-207, which prevents local
> municipalities from enacting or enforcing any
> regulation in conflict with the provisions in the
> Illinois Vehicle Code, does not prevent a municipality
> from enacting a parking ordinance even if those
> ordinances differ from those listed in the Illinois
> Vehicle Code. *See* 625 ILCS 5/11-207; 5/11-208.
> Plaintiff's argument fails to recognize that Section
> 207 actually states "no local authority shall enact or
> enforce any ordinance rule or regulation in conflict
> with the provisions of this Chapter *unless expressly*
> *authorized herein*." *Id.* (emphasis added). The very

---

[2] Plaintiff seeks to apply the Illinois Motor Vehicle Code
because Plaintiff wishes this Court to apply the test for
whether a home rule municipality's ordinance conflicts with
state law.  Plaintiff argues that the City of Peoria's
interpretation of its ordinances as authorizing arrest for
parking violations is contrary to the penalty provisions of the
Illinois Motor Vehicle Code's guidelines for petty offenses.
According to Plaintiff, the guidelines do not allow for arrest.
Since the city issuing an arrest warrant is governed by the
Illinois Municipal Code rather than the Illinois Motor Vehicle
Code, the Court need not address this argument.

next section of the Chapter expressly authorizes local authorities to enact rules and regulations regarding parking. *See* 625 ILCS 5/11-208(a). Section 208 states "[t]he provisions of this Code shall not be deemed to prevent local authorities with respect to streets and highways under their jurisdiction and within the reasonable exercise of the police power from . . . regulating the standing or parking of vehicles." 625 ILCS 5/11-208(a)(1). Accordingly, because the Illinois Vehicle Code does not regulate parking but rather gives municipalities the power to enact local ordinances to regulate parking, the Illinois Municipal Code is the proper chapter of this Code for this Court to reference when determining whether Illinois state law authorizes the arrest of a person who has failed to pay multiple parking tickets.

The parties now pick up their arguments from Judge Mihm's holding.  Plaintiff argues that Illinois Courts have held that that the Illinois Motor Vehicle code controls over the Illinois Municipal code and cites People ex rel Ryan v. Village of Hanover Park, 724 N.E.2d 132 (Ill.App.1st. 1999).  However, People ex rel Ryan does not apply.  In that case the Court addressed a *quo warranto* claim brought by the attorney general against Illinois municipalities.  The municipalities were issuing traffic citations without reporting traffic offenses to the Illinois Secretary of State as required by Illinois Supreme Court Rule 552 and Section 2-604 of the Illinois Vehicle Code. In that case, the Illinois Vehicle Code would obviously control over the Illinois Municipal code because the Vehicle Code specifically stated the reporting requirements.  In parking ticket cases, however, the Illinois Vehicle Code specifically

7

states that "[t]he provisions of this Code shall not be deemed
to prevent local authorities with respect to streets and
highways under their jurisdiction and within the reasonable
exercise of the police power from . . . regulating the standing
or parking of vehicles." 625 ILCS 5/11-208(a)(1).  No such
exception existed in the People ex rel Ryan.  Accordingly, that
case does not apply to this case and this Court agrees with the
reasoning presented by Judge Mihm.

Plaintiff further argues that "Section 16-101 [of the
Illinois Vehicle Code] requires uniform enforcement and penalty
provisions for all violations."  625 ILCS 5/16-101 states that
"the provisions for this Chapter shall be applicable to the
enforcement of this entire Code, except where another penalty is
set forth in a specific Chapter which is applicable to that
Chapter or a designated part or Section thereof."  Implicit in
the power designated to local authorities to regulate parking is
the power to enforce and penalize offenders for parking
violations.  The power to "regulate" has been designated to
local authorities.  Included in that power is the power to
penalize and enforce.  Not only does this make sense from the
prospective of statutory construction, but also from a policy
prospective.  When enacting the Illinois Vehicle Code, the
legislature certainly did not intend for the penalties,

8

enforcement procedures and fines to be the same for every parking space in every municipality all across the state.

Since the Illinois Municipal Code applies, it is important to note that the Municipal Code authorizes the issuance of a warrant for the arrest of an individual when authorities believe that a city ordinance has been violated. 65 ILCS 5/1-2-9 states as follows:

> Except as provided in Section 1-2-9.1 of this Act, in all actions for the violation of any municipal ordinance, the first process shall be a summons or a warrant. A warrant for the arrest of an accused person may issue upon the affidavit of any person that an ordinance has been violated, and that the person making the complaint has reasonable grounds to believe that the party charged is guilty thereof. Every person arrested upon a warrant, without unnecessary delay, shall be taken before the proper officer for trial.

Section 1-2-9.1 states:

> In all actions for violation of any municipal ordinance where the fine would not be in excess of $750 and no jail term could be imposed, service of summons may be made by the city clerk by certified mail, return receipt requested, whether service is to be within or without the State. 65 ILCS 5/1-2-9.1

Although Section 1-2-9.1 gives the City the option to serve an offender through certified mail instead of issuing a warrant, Section 1-2-9.1 does not require the City to do so. The statute merely says that "service of summons may be made by the city…." Id. Accordingly, arresting an individual for parking violations is authorized under the Illinois Municipal Code. See Rist v. City of Peoria, 2006 WL 452582 (C.D.Ill. 2006).

Plaintiff's last statutory argument relates to applications of the Peoria City ordinances.

The Peoria Local Ordinance states in Section 1.7 that

> Upon default in payment of any fine, interest, court costs or installment thereof for more than 30 days, the defendant shall be summoned to appear before the circuit court of the county by personal service or registered mail, return receipt requested, to show cause, if any he has, why he should not be held in contempt of the court for his willful failure or refusal to pay the fine, interest and costs imposed. Personal service of a summons shall be made not less than three days before the date upon which the defendant must appear before the court to show cause. Peoria City Code § 1.7. (See Doc. Exb 10.)

Plaintiff argues that this Section sets forth a strict procedure for collecting "any fine." This procedure provides that a summons be issued when a party has failed to pay a fine. Plaintiff is essentially arguing that the City of Peoria is not following this ordinance when warrants are issued when a party has not been served with a summons. Judge Mihm addressed this argument in the previously noted case Rist v. City of Peoria, 05-1013 (C.D.Ill. Order on Motions for Summary Judgment, February 22, 2006). Therein, Judge Mihm noted that Section 1-7 is a contempt procedure to be used when a person defaults on a fine for more than thirty days. It does not apply when there

has not been a finding that the offender failed to pay a parking

citation.[3]

Furthermore, even assuming *arguendo* that Section 1-7 did

apply to parking ticket cases when a party has not been

summoned, Section 1-7 still would not apply in this case.   In

this case, more than one summons was issued but none were

successfully served.   Section 1-7 is silent on the matter of

what happens when the City attempts to serve a summons upon an

individual who has not paid their citations, but is unable to do

so successfully.   Nothing in Section 1-7 would prevent the City

from then invoking the power to arrest an individual already in

place under the Illinois Municipal Code when they have tried but

been unable to successfully serve a defendant.[4]

---

[3] Section 28-82 addresses the issue of enforcement of penalties
for parking citations.   Specifically, it states that proceedings
are initiated when the corporate counsel institutes a proceeding
to prosecute the violation of the ordinance.   Accordingly, a
fine for contempt (which would fall under Section 1-7) can not
be invoked until a court has ordered a party to pay a citation
and the party has failed to pay the citation.   Any summons or
arrest for a failure to pay a ticket made up until that point
would not fall under the rubric of Section 1-7.

[4] Looking at both the Illinois Municipal Code and the Peoria City
Ordinance in this manner would not conflict with the doctrine of
*In pari material* as argued by Plaintiff.   This is because
Section 28-82 addresses the issue of enforcement of penalties
for parking citations.   Specifically, it states that proceedings
are initiated when the corporate counsel institutes a proceeding
to prosecute the violation of the ordinance.   Accordingly, a
fine for contempt (which would fall under Section 1-7) can not
be invoked until after a fine has been entered in that
proceeding.   Any summons or arrest for a failure to pay a fine

B. Parking Violations are a Quasi-Criminal Matter

Plaintiff presents the following argument:  The City of Peoria has established that parking violations are civil and not criminal matters.  For the City to obtain an arrest warrant against an individual they are constitutionally required to have authorization of custodial detention under the applicable substantive law.  In cases involving parking tickets, the city did not have authorization for custodial detention for the offense because arrests for a civil violation are contrary to the Fourth and Fourteenth Amendment requirements of due process.

Plaintiff assertion rests on the proposition that proceedings involving parking violations are purely civil proceedings.  Plaintiff cites Toth v. City of Peoria, 574 N.E.2d 1334 (Ill. App. 3d. 1991) in which the City of Peoria tried to avoid the 18-month statute of limitations period allowed for a misdemeanor prosecution under the Code of Criminal Procedure, Ill.Rev.Stat. 1989, ch. 38, par. 3-5.  Instead, Peoria sought to have the five-year statute of limitations period for "civil actions not otherwise provided for" applied to parking ticket proceedings.  In rejecting the application of the Code of Criminal Procedure, the Court cited City of Crystal Lake v. Sak (Ill. App. 2nd. 1977) which held that the civil standards

_____

(or settlement as it is referred to in the statute) made up until that point would not fall under the rubric of Section 1-7.

apply to violations of municipal ordinances not involving an arrest.  The Toth court held that "to the extent that the instant case did not involve an arrest, we find that the Sak court's adherence to civil procedure rules… applies to the resolution of the issues here." Toth, 574 N.E.2d at 1336.

When looking solely at this reasoning, the Toth court seems to be saying that the lack of an arrest warrant in parking ticket cases was the key factor in determining the longer statute of limitations.  Now, the City of Peoria would like to have their cake and eat it too by having the lengthened statute of limitations and the freedom to arrest individuals who have not paid their fines.  However, under subsequent case law, the City of Peoria is entitled to exactly that.

The Toth Court specifically held that that parking ticket proceedings were "quasi criminal," and such proceedings involving violations of municipal ordinances are "hybrids presenting aspects of both civil and criminal nature." Toth, 574 N.E.2d at 1335.  Numerous Courts have noted the quasi criminal nature of city, municipal and local ordinances. See, e.g., Mayer v. City of Chicago, 404 U.S. 189, 196 (1971); Petersen v. City of Greenville, 373 U.S. 244; United States v. Skocven, 405 F.3d 537, 550 (7th Cir. 2005).  When federal courts in Illinois have faced the question of whether an arrest is lawful for violations of a city municipal ordinance, they have turned to the Illinois

13

Supreme Court for guidance.  Mustfov v. Rice, 663 F.Supp. 1255
(N.D.Ill. 1987).  In Mustfov, plaintiffs were challenging
whether an arrest under a Chicago City Ordinance.  The Court
noted the "quasi-criminal" nature of ordinance violations.  The
Court then relied upon the Illinois Supreme Court's ruling in
People v. Edge, 94 N.E.2d 359 (Ill. 1950), which held as
follows:

> "While an action for a violation of a municipal
> ordinance is both tried and reviewed as a civil
> proceeding… this does not preclude a violation of a
> municipal ordinance, subjecting the offender to the
> penalty of a fine from being a 'criminal offense'
> within the contemplation of the statue on arrest."
> Edge, 94 N.E. 2d at

This Court agrees. The City of Peoria may have won the
previous ruling that parking violations are to be viewed as a
civil proceeding for purposes of the statute of limitation.
After all, according to Edge, an action for violation of a
municipal ordinance is both tried and reviewed as a civil
proceeding.  However, this does not preclude parking ordinances
which subject the offender to the penalty of a fine from being a
'criminal offense' within the contemplation of the statute on
arrest.

Plaintiff cites several cases to support his position that
an arrest for a civil violation is contrary to the Fourth
Amendment.  Allen v. City of Portland, 73 F.3d 232, 234 (9th
Cir. 1995), Kennedy v. Los Angeles Police Dept., 901 F.2d 702

(9th Cir. 1990), and Moore v. Marketplace Rest, 754 F.2d 1336
(7th Cir. 1985) all involve clear civil disputes where one party
or another was arrested.  Because all of these cases involve
clear civil disputes (such as leaving a disputed coupon instead
of cash payment for a restaurant tab) in which an arrest was
made, these cases do not guide the Court on the "quasi-criminal"
nature of unpaid parking tickets.

Plaintiff's other case, Doe v. Metropolitan Police Dept.,
445 F.3d 460 (D.C. Cir. 2006) provides better guidance. In Doe,
the plaintiffs were arrested for underage drinking under a
District of Columbia ordinance.  The Court specifically noted
that the 2001 version of the ordinance made certain offenses
criminal misdemeanor matters while other offenses were
specifically "a civil matter."  In that case the youths were
arrested under the "civil" portion of the statute for what the
Court described "an unambiguously civil offense."  As a result,
the Court ruled that the plaintiff's claims for Fourth Amendment
violations could proceed.  Nothing in the statute, discussed
infra, describes parking violations as an unambiguously "civil"
matter.  Case law involving the statute of limitations does not
make the matter unambiguously civil, because that case law
described parking ticket proceedings as "quasi-criminal."
Instead, under Illinois law the matter is "quasi-criminal" and

15

under the standard set in Doe, Plaintiff's claim would not
survive.

## C. Plaintiff's Due Process Arguments

Plaintiff states that the Fourteenth Amendment guaranty of
procedural due process requires certain protections for criminal
defendants.  Plaintiff then argues that since the city does not
extend those protections to parking ordinance cases, the
proceedings are civil and deprivations of liberty based on such
proceedings are a deprivation of procedural due process.  To
support this position Plaintiff cites Bloom v. Illinois, 391
U.S. 194, 208-210 (1968).  Bloom dealt with the procedural
requirements for the offense of criminal contempt.  The Court
noted that contempt of Court was a petty offense that did not
require a trial by Jury.  Nothing in Bloom would suggest that an
individual can only be arrested for those criminal violations
which would provide a typical criminal the gamut of protections
afforded by the constitution.  Furthermore, the Court in Bloom
still considered contempt hearings a criminal matter rather than
a civil matter despite the fact that contempt hearings do not
provide all the guarantees of procedural due process.  Lastly,
the legitimacy of an arrest is not measured by whether the
individual arrested will have all the guarantees of procedural
due process.  See McNair v. Coffee, 279 F.3d 463 (7th Cir.
2002)(holding that officer arresting individuals at gunpoint for

16

unpaid parking tickets was entitled to qualified immunity);
<u>Atwater v. City of Lago Vista</u>, 532 U.S. 318 (2000)(holding that
arresting motorist for failing to wear her seat belt did not
violate motorist's Fourth Amendment rights).

Accordingly, since Plaintiff's due process argument fails,
the Court finds that there is no legal formula from which
Plaintiff could recover simply for being arrested on a warrant
that was issued for unpaid parking tickets.  The province of
Rule 12(b)(6) motions is to question the availability of a legal
formula justifying relief on the alleged facts, not to test or
determine the facts themselves. <u>Maple Lanes</u>, 196 F.3d 823, 824-
25.  As a result, Plaintiff's claim that an arrest warrant for
unpaid parking tickets is unconstitutional or against Illinois
statutes fails.  This leaves open the question of Plaintiff's
alleged false arrest.

### D. Absolute and Qualified Immunity

1. Absolute Immunity

Defendant Williams argues that she is entitled to absolute
immunity for the erroneous information added to the circuit
court's order and corresponding warrant.  Plaintiff argues that
she is entitled to absolute immunity for work that is
"intimately associated" with the judicial process and supplying
this erroneous information falls under that rubric.

According to Kalina v. Fletcher, 522 U.S. 118 (1997) a prosecutor will be entitled to absolute immunity when performing the traditional functions of an advocate.  However, when a prosecutor is performing the function of a complaining witness, the prosecutor can be liable under § 1983. Id. at 131.

Based solely upon Plaintiff's pleading before the Court, the erroneous material was supplied "as a supplement to the affidavit." (Complaint at 4)  Thus, it appears that Williams, or an official acting on her behalf, could have presented the erroneous information while performing the function of a complaining witness rather than as an advocate.  In which case, Williams would not be entitled to absolute immunity.

2. Qualified Immunity

Defendant argues that Plaintiff has not pled facts which would meet Plaintiff's burden of establishing the existence of an allegedly clearly established constitutional right. Specifically, Defendant argues that there are not any closely analogous cases, decided before the defendants acted or failed to act, which are required to find that a constitutional right is clearly established and avoid qualified immunity.  Rakovich v. Wade, 850 F.2d 1180, 1209 (7th Cir. 1988).

Here, it is important to narrow down Plaintiff's remaining claims.  Specifically, based upon the discussion *supra*, Plaintiff does not have a claim that an arrest for failure to

pay parking tickets is unconstitutional.  However, this does not mean that Plaintiff's claim for false arrest is not valid.

In determining whether the claim for false arrest could be valid, the issue is not whether the police arrested the correct individual.  "The Fourth Amendment is not violated by an arrest based upon probable cause, even though the wrong person is arrested." Graham v. Connor, 490 U.S. 386, 398 (1989).  An arrest of the wrong person is constitutional if the arresting officers 1) have probable cause to arrest the person sought and 2) reasonably believe that the person arrested is the person sought.  Brown v. Patterson, 823 F.2d 167 (7th Cir. 1987); see, also, Tibbs v. City of Chicago, 469 F.3d 661 (7th Cir. 2006); (citing Hill v. California, 401 U.S. 797 (1971)).  In this case, the Court has already determined that the City of Peoria had probable cause to arrest the person sought.  However without any evidence before the Court it is impossible to determine whether those involved in Plaintiff's arrest reasonably believed that Joseph Thomas was Joshua Thomas.  Since it has been clearly established that the Fourth Amendment is violated if the persons involved in the arrest did not reasonably believe that the person arrested was the person sought, Defendants are not entitled to qualified immunity at this stage.

### E. Class Certification

Plaintiff wishes to represent a class of 571 members who were arrested without service or have outstanding warrants. However, Plaintiff's only remaining claims are related to the fact that he was allegedly falsely arrested.  Based upon the discussion *supra*, there is no basis in this case for claiming that the City of Peoria can not constitutionally arrest an individual for failing to pay their parking tickets.[5]  Nowhere in Plaintiff's briefs does Plaintiff purport to represent a class of persons who were falsely arrested.  Accordingly, Plaintiff's claims fail in the area of numerosity, common questions of law and fact and typicality.

### F. Remaining Issues

Lastly, the Court notes that in previous cases concerning parking tickets, Plaintiff's Counsel has repeatedly reraised the issue of due process in later briefs with the Court.  See <u>Rist</u>,

---

[5] This Court would like to note that there have been numerous filings from arrests for parking violations.  It is certainly not the province of this Court to instruct the City on how they should conduct their operations. Furthermore, this Court does not express an opinion on the debate regarding arrests for unpaid parking tickets. However, the City repeatedly notes in their brief that they could easily pass an ordinance expressly precluding the City Attorney from issuing such arrest warrants. (Doc. 28 at 4.)  It might not be a bad idea.  While an enforcement mechanism is necessary to prevent people from flouting the law, many a social commentator has noted how ridiculous it can seem to the public to get arrested for trivial violations of local ordinances.  <u>See</u> Arlo Guthrie, "Alice's Restaurant Massacree," on Alice's Restaurant (Reprise Records 1967); <u>and</u> Shakespeare, William, <u>Comedy of Errors</u>, act I, sc. 1.

05-1013 (C.D.Ill).  This Court has taken the time to address each of Plaintiff's arguments on the issue of due process.  In doing so, this Court has found that there is no basis in this case for claiming that issuing an arrest warrant for unpaid parking tickets is unconstitutional or in conflict with local and state ordinances.  The only issuing remaining in this case is Joseph Thomas' allegedly false arrest.  Reraising the issue or arrests for unpaid parking tickets in this case before this Court will appear duplicitous and vexatious.

**CONCLUSION**

IT IS THEREFORE ORDERED that Defendants' Motions to Deny Class Certification (Docs. 23 and 29) be GRANTED and Defendants' Motions to Dismiss (Docs. 25 and 27) be GRANTED IN PART and DENIED IN PART.  Plaintiff's claim may proceed on the issue of Plaintiff's allegedly false arrest.  This case is referred to United States Magistrate Judge John A. Gorman for all pretrial proceedings.

ENTERED this  2nd  day of February, 2007.

s/Joe Billy McDade_____
Joe Billy McDade
United States District Judge