UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| JOSEPH A. THOMAS, | ) |
| Plaintiff, | ) |
| v. | ) No. 06-1018 |
| CITY OF PEORIA, ILLINOIS | ) |
| & | ) |
| SONNI WILLIAMS, Assistant Corporation Counsel of the City of Peoria | ) |
| Defendants. | ) |

# O P I N I O N   A N D   O R D E R

Before the Court is the City of Peoria's ("Peoria") Motion for Summary Judgment (Doc. 52) and Sonni Williams' ("Williams") Motion for Summary Judgment (Doc. 53.) Plaintiff Joseph Thomas has filed a single Response to both Motions (Doc. 56.) Peoria has filed a single Reply in support of its Motion (Doc. 58.) For the following reasons, Defendants' Motions for Summary Judgment are GRANTED.

## BACKGROUND

On January 30, 2005, Plaintiff, Joseph Thomas, was stopped for a traffic violation by Peoria Police Officer Joshua Allenbaugh. At the stop, Officer Allenbaugh discovered an outstanding arrest warrant for a *Joshua* Thomas. The address contained on the arrest warrant did not match Joseph Thomas' address, but the driver's license numbers did match. Believing the warrant contained a

typographical error and was actually intended for Joseph Thomas, Officer Allenbaugh arrested Plaintiff based on the warrant and transported him to the Peoria County Jail. Plaintiff paid a $ 100 bond and was released. On February 10, 2005, Plaintiff appeared before Circuit Court Judge Albert Purham. Judge Purham found that *Joseph* Thomas was not the *Joshua* Thomas listed in the arrest warrant and ordered the bond be refunded.

Even now, it is unclear how Plaintiff's driver's license number appeared on an arrest warrant intended for *Joshua* Thomas. The mistake can be traced back to an affidavit completed by Defendant, Sonni Williams. The affidavit stated that *Joshua* Thomas had failed to pay his outstanding parking tickets, but contains Plaintiff's driver's license number. Plaintiff does not allege that Williams had any personal motivation to have Plaintiff arrested, but simply wrote down the wrong number because she was "deliberately indifferent."

Plaintiff attempts to establish a pattern of deliberate indifference and points to another mistake that Williams has led to a separate false arrest. Specifically, Plaintiff points to a case of Lindell Wright. A fine was imposed against Wright for violating a Peoria city ordinance. The circuit court extended the time for Wright to pay the fine. Williams was unaware that the court had provided an extension and filed a petition for rule to show cause. When Wright could not be served with the show cause order, she obtained an arrest warrant for Wright and had him arrested.[1]

---

[1] Wright filed suit before this Court and the claim was voluntarily dismissed. <u>Wright v. City of Peoria</u>, No. 05-1063 (C.D. Ill. dismissed Mar. 28, 2006).

2

Plaintiff has now brought suit complete with claims under 42 U.S.C. § 1983 and state law for abuse of process and false arrest. Plaintiff also sought relief on behalf of a class of similarly situated individuals who had been arrested by the city for parking violations. This Court previously denied class certification and granted in part and denied in part Defendant's Motion to Dismiss. Specifically, the Court found *inter alia* Defendant Williams was not entitled to absolute immunity. Additionally, both Defendants were not entitled to qualified immunity at that stage of litigation.[2] Defendants Williams and Peoria now bring separate Motions for Summary Judgment on the remaining claims.

## LEGAL STANDARD

Summary judgment is appropriate when there are no issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In deciding a motion for summary judgment, the court must view the factual evidence and draw all reasonable inferences in favor of the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986). The nonmoving party must set forth specific facts showing there is a genuine issue for trial. A genuine issue for trial exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The moving party is responsible for informing the Court as to the portions of the record which demonstrate the absence of a genuine issue of

---

[2] The facts at bar regarding absolute and qualified immunity have not materially changed between this Court's previous and this Order. Accordingly, this Court's holdings on qualified and absolute immunity still apply at this stage of the litigation as well.

3

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317 (1986).  The movant may meet this burden by demonstrating an "absence of evidence to support the nonmoving party's case."  Id. at 325.

## ANALYSIS

### I.  Defendant Peoria's Liability under § 1983

Defendant Peoria asserts it has no liability for Plaintiff's action arising under § 1983.  A municipality is not liable for the actions of its agents through a theory of *respondeat superior*.  Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978).  Plaintiff must instead establish there was a policy or custom attributable to municipal policy makers and that such a policy was a moving force behind the constitutional deprivation.  White v. City of Markham, 310 F.3d 989 (7th Cir. 2002).  Peoria argues Defendant Williams, as an Assistant Corporation Counsel for Peoria, is not a policy maker for the City of Peoria nor was she acting in furtherance of any policy or custom of the municipality.

### A.    Defendant Williams as a Policy Maker

Courts look to state law for guidance to determine whether an individual is an agent under § 1983.  McMillian v. Monroe County, 520 U.S. 781 (1997).  Local law will always direct a court to an official that has the responsibility for setting policy.  Eversole v. Steele, 59 F.3d 710, 716 (7th Cir. 1995).  From there, policy making authority may be delegated to another, giving them policy making authority over the matter.  Pembaur v. City of Cincinnati, 475 U.S. 469 (1986).

Under Illinois law, the determination of a particular official as a policy maker for municipal liability in § 1983 actions is based on three elements: "(1) whether the policy decision purportedly made by the official is within the realm of the official's grant of authority; (2) whether the official is meaningfully constrained by policies not of that official's own making; and (3) whether the official's decisions are final … [or] are subject to any meaningful review." Fabiano v. City of Palos Hills, 336 Ill. App. 3d 635, 656 (2002) (internal citation omitted). These factors determine if an individual has policy making authority through his position or by delegation.

Peoria asserts its sole policymaker for all litigation matters is Randall Ray, Peoria's Corporation Counsel and that authority is not delegated to the Assistant Corporation Counsel. Peoria cites Peoria, Ill., Code § 2-128 which states the Corporation Counsel, shall: "[b]e responsible for all criminal prosecutions by the City; and . . . [r]epresent the City as attorney in all legal proceedings in which the City is a party . . . ." (Doc. 52.) Peoria asserts that Williams' title implies she is "not generally the final policymaker for the City of Peoria." (Doc. 52.)

Plaintiff's only response is a baseless statement that Williams has had the authority delegated to her. Plaintiff cites several cases that discuss delegation of policymaking authority, however, he fails to present any evidence beyond his assertion that "[t]he Assistant Corporation Counsel is the policy making agent of Peoria for any lawsuit in which she is counsel of record."[3] (Doc. 56.) While a city

---

[3] See Pembaur, 475 U.S. at 469; Kujawski v. Board of Comm'rs of Bartholomew County, 183 F.3d 734 (7th Cir. 1999); Eversole, 59 F.3d at 710. Policy making authority may be delegated to other individuals in either a formal or customary

counsel may delegate authority to their assistants either expressly or customarily, Plaintiff has not presented any depositions, interrogatory responses, or any other evidence discussing Williams responsibilities and authority for the city of Peoria. Peoria, Ill., Code § 2-128 clearly states that Ray is responsible for *all* litigation matters of the city and no evidence has presented to the contrary. While Williams may very well have policy making authority delegated to her, this Court cannot blindly make that assumption when Plaintiff has failed to present any evidence supporting that position.

### B. Defendant Williams' Actions as Policy of Peoria

For Peoria to be liable for Williams' actions, Plaintiff must also show that Williams' actions were part of a policy or custom of the municipality. Monell, 436 U.S. at 694. Municipal policy need not be expressly written, but may be inferred from actions taken by government officials empowered with final policymaking authority to set policies related to those actions. Pembaur, 475 U.S. at 481-82. However, the actions taken must be more than simply an exercise of permissible discretion. Id. at 482. Furthermore, the actions are not policy if they would be in violation of the current municipal policies. Auriemma v. Rice, 957 F.2d 397 (7th Cir. 1992).

In this case, Peoria has no official policy or custom of issuing incorrect arrest warrants or false affidavits which would lead to an incorrect arrest warrant. It would be incomprehensible to have a policy of issuing faulty arrest warrants. Such

---

manner. Although Ray had the ability to delegate authority, Plaintiff fails to submit any evidence to show that he actually did in this case.

a policy would clearly upset Peoria's own interest in apprehending the correct offenders. Plaintiff's arrest, in this case, was simply the result of a mistake and not part of any policy or custom.

Plaintiff claims Williams negligence is so blatant when issuing arrest warrants that her negligence rises to the level of deliberate indifference. Specifically, Plaintiff attempts to establish a pattern of deliberate indifference by pointing to the case of Lindell Wright. In Wright, Williams issued an affidavit and obtained an arrest warrant for failing to pay a fine even though the state court had extended the deadline for paying the fine. Wright's counsel sent a letter to Williams and Ray demanding monetary compensation. Williams responded that Peoria was not liable to the defendant and that she had absolute immunity from civil liability. Ray also notified Wright's counsel that Peoria would not settle and despite the unfortunate error, Peoria only issues warrants when necessary and it would be too great a burden for a prosecutor to have all files, including unscheduled appearances in his possession (Doc. 57 at 7).

Plaintiff's defines deliberate indifference as when a party "just doesn't give a damn" about whether someone is deprived of constitutional rights. (Doc. 56) (citing Bordanaro v. McLeod, 871 F.2d 1151, 1164 (1st Cir. 1989)). This standard, alone is inadequate. A more appropriate definition is the "conscious disregard of known or obvious dangers." Maymire, 114 F.3d 646, 651 (7th Cir. 1997).

In the case at bar, the two mistakes highlighted by Plaintiff do not amount to a conscious disregard of obvious dangers. In both cases, Williams made mistakes –

7

foolish mistakes considering that that they both resulted in a false arrest. However, in neither case were the mistakes conscious or deliberate. Plaintiff emphasizes the letters written in response to Wright's demand for compensation, and Williams' legal argument that as a prosecutor she is entitled to absolute immunity. Plaintiff argues that this evidence shows that Williams & Ray do not "give a damn." However, nothing in these letters suggests that Williams has a conscious disregard for making such mistakes. Simply because she believes that she should not face any liability does not mean that she is deliberately indifferent to making this kind of mistake. These mistakes are costly, distract from a prosecutor's task at hand, anger citizens, and invite frustrating lawsuits such as this. There is no evidence that Williams had a conscious disregard for these risks.

Therefore, Peoria's Motion for Summary Judgment as to the § 1983 claim is GRANTED as Williams is not a policy maker, nor did she act in furtherance of any policy or custom of Peoria.

**II.     Plaintiff's Fourth Amendment Claim**

The arrest in this case does not amount to a fourth amendment violation. This arrest warrant was issued based upon information that was available at the time that led officers to believe that a violation had occurred. It named the individual that committed the violation, but contained a mistaken driver's license number. The arresting officer had a reasonable belief that the person he was arresting was the person named in the warrant since the warrant contained the same driver's license number and a very similar name. Powe v. City of Chicago, 664

F.2d 639, 645 (7th Cir. 1981); Hernandez v. Sheahan, 455 F.3d 772, 775 (7th Cir. 2006). Plaintiff makes numerous arguments that challenge this conclusion. Not only do these arguments fail, but this Court does not even need to delve into the quagmire painted by Plaintiff.

Our Appellate Court addressed a similar case as this where the municipality made an even more egregious error. In Johnson v. Miller, 680 F.2d 39 (7th Cir. 1982), the Seventh Circuit addressed a claim by a woman who was falsely arrested not once, but twice. The plaintiff had the bad luck of having an account number that was chosen by an unknown criminal who used her account to defraud the bank. The bank caught the criminal but still mistakenly had an arrest warrant sworn out against the plaintiff. The plaintiff was arrested and forced to post bond to regain her freedom. At the preliminary hearing the plaintiff demonstrated that the police had the wrong person and the judge entered an order saying that they had the wrong defendant and that a warrant should be reissued. The warrant was reissued, but none of the inaccurate information was corrected. As a result, a different police officer went out to the plaintiff's house, arrested her, and put her through the same process all over again.

Our Appellate Court noted that even under these facts the municipality had not violated the plaintiff's Forth Amendment rights. However, the Court went on to make the following statement:

> We resist the temptation to reach this conclusion by the casuistic route of deeming a warrant to be valid on its face even if it contains discrepancies… and then invoking the proposition that the execution of a valid warrant against the person named in it does not

9

> violate the Fourth Amendment even if the warrant was issued by mistake. We place our decision on a more practical ground. The execution of a warrant by an officer who if he were more careful might have noticed that the warrant had been issued by mistake is not the stuff out of which a proper federal case is made. The Fourth Amendment and section 1983 have higher objects in view than getting arresting officers to backstop the mistakes of their superiors…. This lawsuit under section 1983 duplicates, as the plaintiff's counsel acknowledged at oral argument of this appeal, state tort remedies for false arrest, false imprisonment, invasion of privacy, defamation, and negligence. The conduct alleged in the complaint is outrageous, but it is also fully actionable under state law….
>
> This is not to say that police officers can run amok, without fearing liability under section 1983, so long as they have a piece of paper in their hands called an arrest warrant. If the complaint in this case had alleged that [the police officers] had procured a warrant that [they] knew to be based on mistaken identity in an effort to deprive [the plaintiff] of her liberty or property, it might be a very different case…. But that is not the allegation. The allegation is that the officers… carelessly [] failed to notice that the description in the warrant did not match the appearance of [the plaintiff]. This is not enough to bring section 1983 into play.
> <u>Johnson</u>, 680 F.2d at 41-42.

This reasoning applies to the case at bar. Section 1983 is not intended to be a backstop barring prosecutors from ever making a mistake. A federal case should not be made out of a prosecutor who mistakenly transcribes a driver's license number – even if she has made a mistake in the past. There is no allegation that Williams or anyone else intentionally deprived Plaintiff of her liberty. Accordingly, the allegation that Williams wrote down the wrong number and the police officer followed that number instead of the name on the warrant is not enough to bring § 1983 into play.

### III. Remaining State Law Claims

In view of the Court's finding that Defendant is entitled to summary judgment on the federal law claims, this court declines to exercise jurisdiction over Plaintiff's remaining claims under state law. These remaining claims under state law include a common law claim for abuse of process and a common law claim for false arrest. "It is the well-established law of [the Seventh Circuit] that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." Groce v. Eli Lilly & Co., 193 F.3d 496, 501 (7th Cir.1999); See Bilow v. Much Shelist Freed Denenberg Ament & Rubenstein, P.C., 277 F.3d 882, 896 (7th Cir.2001). Nothing in the record before the Court indicates that "the interests of judicial economy, convenience, fairness, or comity" would favor this federal court adjudicating Plaintiff's state law claims after having dismissed all federal claims. See Wright v. Associated Ins. Co., 29 F.3d 1244, 1251 (7th Cir.1994) (citation omitted). Thus, the Court exercises its discretion to decline jurisdiction over Plaintiffs' state law claims.

### CONCLUSION

IT IS THEREFORE ORDERED that Defendants' Motions for Summary Judgment are GRANTED. Plaintiff's remaining state law claims are dismissed without prejudice.

CASE TERMINATED.

ENTERED this 14th day of July, 2008.

s/ Joe Billy McDade<br>
Joe Billy McDade<br>
United States District Judge